IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CR3060 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| OCTAVIO DELVILLAR, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Octavio Delvillar (Delvillar) has filed a 2255 motion, affidavit and brief. (Filings 190-192.) After initial review,[1] I will deny the motion because it lacks merit.

## *Background*

On February 9, 2009, Delvillar filed his section 2255 motion. (Filing 190.) Condensed and summarized, he claims that his counsel was ineffective because counsel did not challenge the traffic stop and subsequent investigation on Interstate 80 that resulted in his conviction for possession with intent to distribute 5 kilos or

---

[1]When a § 2255 motion is forwarded to a judge,

> [t]he judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b) of the *Rules Governing Section 2255 Proceedings for the United States District Courts*.

more of cocaine.  Delvillar was represented at trial and on appeal by Michael J. Hansen, a very experienced Assistant Federal Public Defender.

On April 6, 2005, Trooper Frye of the Nebraska State Patrol stopped a Ford Excursion driven by Delvillar for speeding, driving on the shoulder and view obstruction.  The car had been purchased by Delvillar less than a month earlier in Massachusetts.

Frye noticed a strong odor of air freshener coming from the vehicle.  Delvillar and co-defendant Fernando Nunez told conflicting stories about their travels.  Frye obtained verbal and written consent to search from both men.  Frye found a hidden compartment in the vehicle that contained 25 packages of cocaine weighing 60 pounds including the packaging.  Much of what happened that day was captured on the trooper's "in car" video camera which also contained an audio recording device. (Filing 100 at CM/ECF p. 35.)

Both Delvillar and Nunez insisted upon a jury trial.  At trial, Hansen argued that Delvillar was unaware of the drugs as evidenced by Delvillar's cooperation with law enforcement.

As Hansen had suggested, Frye testified that Delvillar was quite helpful.  Frye said that Delvillar "offered to let me search the vehicle" and Frye, accepting Delvillar's offer, then secured the defendant's written consent (in Spanish) to search the vehicle.  (*Id.* at CM/ECF pp. 49-50.)   At the time Delvillar made his offer to Frye, Delvillar was not in custody, but was free to leave.   In fact, Frye testified that he told Delvillar that "the traffic stop is done" and that "he's free to go[.]" (*Id.* at CM/ECF p. 105.)  Frye added that Delvillar never revoked the consent or objected in any way to the search.

After the trooper found the hidden compartment, but before finding all the drugs, he placed Delvillar and Nunez in the trooper's vehicle (it was dark and raining).  Frye then activated a recording device in his car.  (*Id.* at CM/ECF p. 55.)  The men were unaware that Frye could tape their conversation while they were seated in the vehicle and the trooper continued his search in the falling rain.  As the Court of Appeals later observed, the tape recorded a "damaging" statement by "Delvillar chastis[ing] Nunez for straying from their agreed-upon story . . . ."  *United States v. Delvillar*, 255 Fed. Appx. 93, 95, 2007 WL 4145953 (8th Cir. 2007).

The evidence established that Delvillar made several false statements to Trooper Frye regarding the vehicle and the details of his trip.  *Id.*   In that same vein, the government also offered evidence showing that at the time Delvillar purchased the Ford Excursion in Massachusetts, there was no hidden compartment in the vehicle.  Delvillar purchased the Excursion from "The Auto Yard" on March 16, 2005, paying cash.  The "Auto Yard" purchased the vehicle from "Quincy's Auto Auction" on January 10, 2005, and the owner of the "Auto Yard" testified that his company would not have performed any body work on the Excursion before it sold the vehicle to Delvillar.  Further, the general manager of "Quincy's Auto Auction" testified that his company's vehicle-condition report dated December 9, 2004, indicated no frame damage or alterations were noted.  Still further, the company's records also indicated that no work was done on the vehicle before it was sold to "The Auto Yard."  *Id.*

In addition to the foregoing, the government produced a witness who gave Rule 404(b) evidence designed to rebut the suggestion that Delvillar's possession of the large quantity of cocaine was mistaken or accidental.  In substance, this witness testified that Delvillar had previously been involved with the witness in a scheme to transport up 50 kilos of cocaine in an automobile with the ultimate destination being Massachusetts.  (Filing 103 at CM/ECF p. 30-31.)

The jury found both men guilty. On February 15, 2007, Delvillar was sentenced to 151 months in prison. (Filings 121, 126.) Delvillar appealed but his appeal was denied on November 26, 2007. (Filings 166-169.) Delvillar did not seek relief from the Supreme Court.[2] (Filing 192 at CM/ECF p. 2.)

In the appeal, Hansen attacked the sufficiency of the evidence, but the Court of Appeals found that the evidence was sufficient. *United States v. Delvillar*, 255 Fed. Appx. at 96. Delvillar also submitted a pro se motion to amend his direct appeal arguing that his Fourth Amendment rights were violated in the course of Trooper Frye's traffic stop and subsequent investigation. The Court of Appeals denied that motion without reaching the merits. *Id.*

## *Analysis*

Condensed and summarized, Delvillar claims that Hansen denied the defendant effective assistance of counsel because the lawyer failed to challenge in this court or on appeal the traffic stop and subsequent investigation. Briefly, I next explain why Delvillar's motion has no merit.

---

[2]As indicated in the text, the judgment of the Court of Appeals was dated and filed on November 26, 2007. Since Delvillar did not file a petition for writ of certiorari, the statute of limitations began to run 90 days thereafter or on February 27, 2008. *Clay v. United States*, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari . . . on direct review, § 2255's one-year statute of limitations period starts to run when the time for seeking such review expires."); Sup. Ct. R. 13.1 (stating that a petition for certiorari must be filed within 90 days after the judgment (and not the mandate) is entered). Thus, Delvillar's section 2255 motion was timely since it was filed on February 9, 2009 before the February 26, 2009 deadline. *See* 28 U.S.C. § 2255(f)("A 1-year period of limitation shall apply to a motion under this section.")

In order to prevail on his claim that his counsel rendered ineffective assistance of counsel, Delvillar must show that "'counsel's representation fell below an objective standard of reasonableness,'" and that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Nguyen v. United States*, 114 F.3d 699, 703-04 (1997) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).  In this regard, an evidentiary hearing is unnecessary if the defendant makes an insufficient preliminary showing on either or both prongs.  *See*, *e.g.*, *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim).

There is no reason to think that had Hansen attacked the stop and subsequent roadside investigation, such an effort would have been successful.   In fact, all the evidence is to the contrary.  The following five points illustrate why Hansen would not have prevailed had he contested the stop and subsequent investigation.

First, Delvillar does not dispute that he was properly stopped for traffic infractions.  On the contrary, he admits that he was driving the car and that the auto was "stopped for speeding."   (Filing 191 at CM/ECF pp. 1-2 ¶¶  2 & 6 ("Sworn Affidavit").)  Second, Delvillar admits he was given a warning ticket and that he was told that "the stop was over and that we were free[] to go." (*Id.* at CM/ECF p. 1 at ¶ 3.)  Third, Delvillar admits that he and Nunez "signed a written consent to search form to search the vehicle" and he does not claim his consent was involuntary. (*Id.* at CM/ECF p. 2 ¶ 4.)  Fourth, Delvillar does not claim that he was interrogated but merely asserts that he and Nunez were placed in the trooper's vehicle, that the men had a conversation, that the conversation was recorded and that the tape was played at trial. (*Id.* at CM/ECF p. 2 ¶ 5.)  Fifth, Delvillar's argument that he should have been given *Miranda* warnings before being allowed to talk with Nunez about getting their stories straight while the two men sat alone in the patrol car finds no support in the case law.  Simply put, the exchange between Delvillar and Nunez was voluntary

and not the product of a police interrogation. *See, e.g., United States v. Burns*, 2002 WL 1461749 (D. Minn. 2002) (conversation between defendants who were confined in back of squad car together was not an interrogation that required *Miranda* warning, and thus statements made by defendants and video-taped by police were admissible; statements were not made in response to any question or statement by police officers).

In sum, Hansen cannot be faulted for failing to pursue a groundless legal maneuver. Since counsel's challenged conduct did not fall below an objective standard of reasonableness as shown by the record, including the affidavit of the defendant himself, the motion will be denied.

IT IS ORDERED that the § 2255 motion (filing 190) is denied with prejudice. A separate judgment will be issued.

DATED this day 11th of March, 2009.

                          BY THE COURT:

                          *s/Richard G. Kopf*
                          United States District Judge